[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The petitioner filed an Amended Petition for a Writ of Habeas Corpus on April 7, 2000 alleging that he is suffering from various medical problems which are not being adequately treated by the respondent. The petitioner is confined to the Cheshire Correctional Institution, having been transferred from another Department of Correction facility approximately two months before the habeas hearing.
He has a history of high blood pressure, a high level of cholesterol, gastrointestinal reflux disease, and a fatty deposit in the breast area called gynecomastia. He also has complained about various other medical problems while in confinement.
It is the petitioner's claim that the various medical problems he has and the refusal of the respondent to deal with his problems has created conditions that place his life in danger in violation of his federal and state constitutional rights, and that his confinement is unlawful.
One of the petitioner's principal complaints is that there is a delay with respect to his medications whenever he is transferred from one institution to another. There is validity to that complaint, and the delays did cause him some discomfort with respect to his gastrointestinal reflux disease. However, as of the date of the hearing he had been receiving whatever medication was prescribed, and his medical problems were being addressed by the medical staff at Cheshire.
In addition to claiming that frequently there were delays in receiving his medications for the various ailments which he has, the petitioner also claimed that his medical problems were not being treated properly by the medical staffs at the various correctional centers where he has been confined. The petitioner did not call any other witnesses in support of his claims.
The only witness offered by the respondent was Dr. Edward Blanchette CT Page 12700 who has been a licensed physician in the State of Connecticut since 1974. He was in private practice until 1984 when he became the medical director and clinical services director for the Connecticut Department of Corrections. He continues to serve in that capacity and is very familiar with prison health care. He is board certified in both internal medicine and infectious diseases.
Using the petitioner's voluminous medical records, Dr. Blanchette discussed in detail the various complaints made in the amended petition and as testified to by the petitioner. This memorandum will not attempt to cover all of Dr. Blanchette's testimony. It is sufficient to say that it was Dr. Blancehtte's medical opinion that all of the petitioner's medical needs were being properly addressed by the medical staffs. He testified that the petitioner was taking medications and was doing quite well with respect to his hypertension and that his cholesterol level was now lower than it had been two or three years earlier. His blood pressure was being checked regularly and was within reasonable limits. It was his opinion that the petitioner should lose weight and exercise in order to further help his hypertension and cholesterol level. Dr. Blanchette also conceded that in the past there had been some delays in providing the petitioner with his various medications, but that he believed new procedures instituted had solved that problem. It was his opinion that at the present time the petitioner's gastrointestinal reflux disease was being managed within professionally acceptable standards. With respect to the fatty deposit in the breast area, the doctor testified that was a common finding in an inmate population, with marijuana smoking in the past being a particular risk factor. A mammogram of the breast was negative. It was his opinion that it 15 not a serious medical condition and is really a cosmetic issue. Dr. Blanchette's testimony also covered claims of a growth on the petitioner's genitalia, heart disease, and I groin strain, and it was his opinion that none of them were serious medical conditions. Several electrocardiograms have not shown any heart disease. From August 16, 2001 to the date of the habeas trial, May 2, 2002, a period of nine and one half months, the petitioner had been seen by doctors and nurses approximately fifty times. It was Dr. Blanchette's opinion that the petitioner has received excellent medical care.
In his amended petition, by way of relief the petitioner makes eighteen separate requests. Fourteen of the requests ask this court to issue orders which are concerned with the internal operations of the medical facilities at the various correctional centers. These requests are not appropriate in a habeas corpus action.
Four of these requests concern the petitioner directly. These are requests that the court order the respondent to provide him with adequate CT Page 12701 blood pressure medication, that the respondent schedule him for surgery to remove the lump in his left chest area, that the respondent not prescribe a certain medication because it is ineffective, and that the respondent immediately treat the genital tumor. In order for these requests to be granted, the petitioner must prove that the respondent was "deliberately indifferent" with respect to his medical condition.Hunnicut v. Commissioner of Correction, 67 Conn. App. 65, 69, 787 A.2d 22
(2001). After considering the entire record the court finds that the petitioner has failed to prove that the respondent was deliberately indifferent to his medical needs. He has failed to prove that the action or inaction with respect to his medical condition has placed his life in danger in violation of his constitutional rights or that his confinement is unlawful. Accordingly, the petition is denied.
William L. Hadden, Jr. Judge Trial Referee CT Page 12702